UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B.R & W.R.,<br><br>    Plaintiff,<br><br>  v.<br><br>BEACON HEALTH OPTIONS, et al.,<br><br>    Defendants. | Case No. 16-cv-04576-MEJ<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 26 |

## INTRODUCTION

 Pending before the Court is Defendant SAG-AFTRA Health Fund's[1] ("SAG-AFTRA") Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  FAC, Dkt. No. 21; Mot., Dkt. No. 26.  Plaintiffs B.R. and W.R. filed an Opposition (Dkt. No. 27) and SAG-AFTRA filed a Reply (Dkt. No. 28).  The Court finds this matter suitable for disposition without oral argument and **VACATES** the June 8, 2017 hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b).  Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS** SAG-AFTRA's Motion for the following reasons.

## BACKGROUND

 As it must on a motion to dismiss, the Court takes as true the following well-pleaded allegations of the FAC:

 B.R. and W.R.[2] bring claims for legal and equitable relief under the Employee Retirement

---

[1] SAG-AFTRA Health Fund indicates it was incorrectly sued as the Screen Actors Guild Producers Health Plan for Motion Picture Actors.  Mot. at 1.

[2] W.R. is B.R.'s child.  FAC ¶ 4.

Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B), (a)(3), and (c)(1). FAC ¶ 1. Plaintiffs allege SAG-AFTRA sponsored an employee welfare benefit plan within the meaning of ERISA (the "SAG Plan"), and that B.R. and W.R. participated in the SAG Plan. *Id.* ¶¶ 1, 3-6. The SAG Plan is a self-funded ERISA Plan. *Id.* ¶ 5.

W.R. has a long and severe history of mental illness, for which he has received extensive treatment, including medication and in-patient and residential treatment. *Id.* ¶¶ 16-34. Plaintiffs submitted claims for W.R.'s medically-necessary mental health care treatment provided by two residential treatment facilities, Ascend Recovery and Spring Lake Ranch. *Id.* ¶¶ 15, 34, 37. Plaintiffs allege the administrator of the SAG Plan[3] denied these claims at the initial and multiple appeals levels, and that SAG-AFTRA denied all further appeals. *Id.* ¶¶ 35-37. Plaintiffs contend SAG-AFTRA's denial of W.R.'s mental health claims violates the terms of the SAG Plan, ERISA, and Plaintiffs' rights thereunder. *Id.*, Claim for Relief.

## LEGAL STANDARD

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

---

[3] Plaintiffs originally named Beacon Health Options as the only defendant in this action. *See* Compl., Dkt. No. 1. The FAC only names SAG-AFTRA as a defendant. In addition, documents filed by SAG-AFTRA show that third-party Value Options—not Beacon—was the SAG Plan claims administrator for mental health and substance abuse claims. *See infra*.

United States District Court
Northern District of California

1  relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

2  cause of action will not do.  Factual allegations must be enough to raise a right to relief above the

3  speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

4      In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as

5  true and construe them in the light most favorable to the plaintiff.  *Id.* at 550; *Erickson v. Pardus*,

6  551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  In

7  addition, courts may consider documents attached to the complaint.  *Parks Sch. of Bus., Inc. v.*

8  *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

9      If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

10  request to amend the pleading was made, unless it determines that the pleading could not possibly

11  be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

12  banc) (internal quotations and citations omitted).  However, the Court may deny leave to amend

13  for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the

14  movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

15  to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."

16  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v.*

17  *Davis*, 371 U.S. 178, 182 (1962)).

**DISCUSSION**

18

19      SAG-AFTRA moves to dismiss the FAC on the ground that it fails to state a claim under

20  ERISA.  Furthermore, SAG-AFTRA contends Plaintiffs cannot state a claim based on the denial

21  of payment because the SAG Plan did not provide coverage for the benefits at issue in the FAC.

22  **A.      Failure to State a Claim**

23      In order to state a claim for denial of benefits under ERISA, Plaintiffs must allege

24  plausible facts that a provider owes them benefits under the SAG Plan.  *Elizabeth v. Aetna Life*

25  *Ins. Co*., 2014 WL 2621408, at *2 (N.D. Cal. June 12, 2014) (citing 29 U.S.C. § 1132(a)(1)(B);

26  *Iqbal*, 556 U.S. at 677).  Plaintiffs must allege (1) the existence of an ERISA plan, and (2) "the

27  provisions under the plan that entitle [them] to benefits."  *Forest Ambulatory Surgical Assocs.,*

28  *L.P. v. United HealthCare Ins. Co*., 2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011); *accord*

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1557-58 (C.D. Cal. 2015) (citing *Forest Ambulatory* for same proposition); *Steelman v. Prudential Ins. Co. of Am.*, 2007 WL 2009805, at *6 (E.D. Cal. July 6, 2007) (complaint must sufficiently allege how defendant's actions violated a plan term of ERISA to rise above speculative level).

Plaintiffs' allegations that SAG-AFTRA violated the terms of the SAG Plan are conclusory, and the FAC does not allege facts sufficient to show Plaintiffs are owed benefits under the SAG Plan. The FAC generally suggests the SAG Plan offered behavioral and mental health benefits to participants. FAC ¶¶ 5-6. However, the FAC does not identify specific provisions that cover W.R.'s treatment at Ascend Recovery or Spring Lake Ranch; nor does it identify the provisions of the SAG Plan Plaintiffs contend SAG-AFTRA violated. The FAC instead alleges that federal and state law required the SAG Plan to provide coverage for mental health conditions in parity with coverage for non-mental health conditions (*id.* ¶¶ 11-15[4]); however, Plaintiffs fail to allege the SAG Plan did not, in fact, provide parity (*see id.*).

Because Plaintiffs have not identified precisely which Plan provisions they contend SAG-AFTRA violated by not paying for W.R.'s residential mental health treatment, the Court **GRANTS** the Motion. Plaintiffs must identify those terms of the Plan on which their claim is based with sufficient specificity to show their claim is plausible on its face.

**B.     Coverage for Services Received**

SAG-AFTRA argues the Court should dismiss the FAC with prejudice because "Plaintiffs were not entitled to benefits covering the services they describe in the FAC because they are services not covered by the Plan." Mot. at 7.

---

[4]  Plaintiffs allege the Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA"), 29 U.S.C. § 1185a, and the California Mental Health Parity and Addictions Equity Act of 2008 ("Cal. MHPAEA"), Cal. Health & Saf. Code § 1374.72, applied to the SAG Plan. FAC ¶¶ 11-14. Plaintiffs allege MHPAEA "specifically requires that health plans offer mental health and substance abuse treatments guaranteed at the same scope of benefit levels that are equal to the Plan['s] coverage for medical and surgical benefits[,]" and that MHPAEA was applicable to the SAG Plan. *Id.* ¶ 13. Plaintiffs further assert Cal. MHPAEA "specifically requires that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental illnesses at a level equal to the provision of benefits of physical illnesses." *Id.* ¶ 14. Despite referencing these statutes in the FAC, Plaintiffs do not assert the Plan in fact violates these statutes, nor do they assert claims based on the violation of these statutes. *See* FAC.

1            1.    Documents Incorporated by Reference in the FAC

On a motion to dismiss, the Court may consider documents that are not attached to a complaint under the incorporation by reference doctrine where the Complaint references those documents, the documents are central to Plaintiffs' claims, and no party questions the authenticity of the documents. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see also Lorenz v. Safeway, Inc.*, 2017 WL 952883, at *3 (N.D. Cal. Mar. 13, 2017) ("Courts routinely take judicial notice of ERISA plan documents like" the Plan itself and the summary plan descriptions). To the extent a document has been incorporated by reference in the Complaint, the Court "may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).

Because Plaintiffs' claim is predicated entirely on the terms and benefits of the SAG Plan, the Court may consider a document that contains the Plan's terms and benefits even though Plaintiffs do not reference the document in the FAC. The 2013 Summary Plan Description ("SPD") sets forth the SAG Plan terms and benefits in effect during the events referenced in the FAC. *See* Deutsch Decl. ¶ 2 & Ex. A (SPD), Dkt. Nos. 26-1 & 26-2. Together with newsletters announcing changes in coverage, the SPD is the only governing Plan document. *See* SPD at ECF p. 4 (Screen Actors Guild-Producers Health Plan: the SPD "describes the comprehensive program of Health Plan benefits available . . . . Whenever the benefits outlined in this SPD materially change, the newsletter for the Health and Pension Plans, Take 2, will be sent to you summarizing the amendment to the Plan. The SPD and Take 2 newsletters constitute the Plan Document."); *see also JDA Software Inc. v. Berumen*, 2016 WL 6143188, at *2-3 (D. Ariz. Oct. 21, 2016) (explaining it "is not an uncommon practice" for ERISA plan sponsors to take a "consolidated approach" to plan documentation "where the plan document and the SPD take the form of a single document . . . in contrast to the traditional practice of using a formal legal document with a separate SPD document" (internal quotation marks and citation omitted)); citing *Prichard v. Metro. Life Ins. Co.*, 783 F.3d 1166, 1169 (9th Cir. 2015) ("[T]he SPD is sometimes argued to be the plan; that is, to serve simultaneously as the governing plan document.")). Plaintiffs' argument

5

that the SPD does not set forth the "actual terms and conditions" of the Plan (Opp'n at 8-9) therefore lacks merit. The Court also may consider the denial letters sent by Value Options and the SAG Plan; Plaintiffs reference the letters in the FAC, and they are central to their claims. Deutsch Decl. ¶¶ 3-5 & Dkt. No. 26-2, Exs. B-D. Plaintiffs do not question the authenticity of these documents.

2. The SAG Plan

The SPD contains a section titled "Using The Plan's Network Providers" which describes the convenience and savings of using network providers, and reminds beneficiaries that not all services are automatically covered, even if obtained from a network provider. SPD at 29.[5] The SPD also contains a section titled "Understanding Your Non-Network Costs," which explains that charges for treatment obtained outside the Plan's network "are generally much more expensive." *Id*. at 31. In the "Hospital Benefits (including mental health and substance abuse treatment)" section, the SPD states that "[n]on-network services are only covered in the event of an emergency." *Id*. at 32. The SPD's summary charts listing hospital deductibles, coinsurance, and out-of-pocket maximums show "No Coverage" under any plan for non-network hospitals. *Id*. at 32-33. "Emergencies" are covered at both network and non-network hospitals "within 72 hours after an accident or within 24 hours of a sudden and serious illness." *Id*. at 34. The SPD sets forth different types of (in-network) hospital coverage for benefits "other than mental health and substance abuse" (*id*. at 34-35) and for "mental health and substance abuse (Plan I Only)" (*id*. at 35-36).[6] Hospital benefits for mental health and substance abuse include in-patient care at a 24-hour medical facility, residential treatment centers, partial hospital programs, and intensive outpatient programs. *Id*. at 35. Non-covered hospital expenses include "[a]ll expenses at a non-network hospital, except for emergency treatment." *Id*. at 36. Plan I participants are eligible for medical benefits, including treatment for mental health and substance abuse benefits, and the SPD

[5] Unless otherwise indicated, page references to the SPD refer to the pagination of the document itself, not SAG-AFTRA's or the ECF pagination.

[6] Coverage for the treatment of mental health and substance abuse conditions is not included in Plan II. SPD at 37.

6

summary charts describe the different deductibles, copays, coinsurance and out-of-pocket maximums participants will pay depending on whether they obtain treatment in or out–of-network. *Id*. at 36-37. Mental Health and Substance Abuse Benefits, whether network or non-network, include professional fees for listed diagnoses, psychiatrist or psychopharmacologist for drug management, and psychotherapy. *Id*. at 43. The Benefits Summary charts reiterate that "non-network provider" hospitals are not covered, and that "non-network provider" mental health and substance abuse hospital and alternative levels of care are "not covered." *Id*. at 110-12.

On that basis, the administrator denied Plaintiffs' request related to "Residential treatment, Partial Hospitalization treatment, Intensive outpatient treatment as well as labs and diagnostic testing." Jan. 30, 2015 Denial Letter, Dkt. No. 26-2 at Ex. B. The SPD explained that Value Options administered all mental health claims. SPD at 106. Value Options stated that "[t]he patient is not eligible for out of network benefits under the Plan for the request[ed] treatment referenced above. However, the benefit does allow for services provided by a network provider as long as services have been preauthorized." Jan. 30, 2015 Denial Letter.

The SAG Plan denied Plaintiffs' appeal on the same basis: "The Plan only provides inpatient mental health benefits when care is obtained through a network facility. This includes services provided by out-of-network residential programs. . . . The Plan does not provide benefits for out-of-network facilities under the medical plan or the mental health plan; therefore, the denial of Ascend Recovery's claim . . . is in parity" with the MHPAEA. Nov. 24, 2015 Denial Letter, Dkt. No. 26-2 at Ex. C; *see also* May 4, 2016 Denial Letter, Dkt. No. 26-2 at Ex. D.

    3.   <u>Analysis</u>

Terms in an ERISA plan "should be interpreted in an ordinary and popular sense, as would [a person] of average intelligence and experience.'" *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997) (quoting *Evans v. Safeco Life Ins. Co*., 916 F.2d 1437, 1441 (9th Cir. 1990)).

Plaintiffs argue "there are two alternative explanations regarding non-network care. A reading of the above SPD language would leave a reasonable insured to believe that non-network care, such as is at issue herein, was available to assist W.R. with his mental health treatment and

care. Further, as currently alleged, there is no basis to conclude that the coverage at issue was categorically unavailable to Plaintiffs, especially at this stage of the pleading, and in the absence of any discovery on the in- and out-of-network issue." Opp'n at 7. The Court cannot find Plaintiffs' interpretation of the SPD language is reasonable. The SPD defines residential treatment centers as "hospitals" and excludes from its scope of coverage any out-of-network hospitals except for emergency treatment. *See supra.* While the FAC does not plead that Ascend Recovery and Spring Lake Ranch are out-of-network facilities, Plaintiffs do not dispute these facilities were in fact out-of-network. *See* Opp'n at 3 ("On information and belief, there are no Network residential treatment centers . . . or Network equivalent of the services at issue herein in California."). Thus, the Court finds granting Plaintiffs leave to amend to state a claim based on denial of payment for non-emergency claims for out-of-network hospital charges would be futile.

## CONCLUSION

Because the Plan does not provide coverage for non-emergency, out-of-network hospital treatment, the Court grants the Motion to Dismiss the FAC. To the extent Plaintiffs can, consistent with their obligations under Rule 11, allege coverage existed because W.R. received emergency treatment at these facilities, or can assert another claim, they may file an amended complaint by June 21, 2017.

**IT IS SO ORDERED.**

Dated: May 31, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge