UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| B.R & W.R., | Case No. 16-cv-04576-MEJ |
|---|---|
| Plaintiff, | **ORDER RE: MOTION TO DISMISS SAC** |
| v. | Re: Dkt. No. 32 |
| BEACON HEALTH OPTIONS, et al., | |
| Defendants. | |

## INTRODUCTION

Pending before the Court is Defendant SAG-AFTRA Health Fund's ("SAG-AFTRA") Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). SAC, Dkt. No. 31; Mot., Dkt. No. 26. Plaintiffs B.R. and W.R. filed an Opposition (Dkt. No. 33) and SAG-AFTRA filed a Reply (Dkt. No. 34). The Court finds this matter suitable for disposition without oral argument and **VACATES** the August 24, 2017 hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS** SAG-AFTRA's Motion for the following reasons.

## BACKGROUND

As it must on a motion to dismiss, the Court takes as true the following well-pleaded allegations of the SAC:

W.R. is B.R.'s son. SAC ¶ 4. B.R. and W.R. bring claims for legal and equitable relief under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B), (a)(3), and (c)(1). SAC ¶ 1. Plaintiffs allege SAG-AFTRA sponsored an employee welfare benefit plan within the meaning of ERISA (the "SAG Plan"), and that B.R. and W.R. participated

in the SAG Plan. *Id*. ¶¶ 1, 3-8. The SAG Plan is a self-funded ERISA Plan. *Id*. ¶ 5.

W.R. has a long and severe history of mental illness, for which he has received extensive treatment, including medication and in-patient and residential treatment. *Id*. ¶¶ 13-29. At some point, W.R. moved to Las Vegas, Nevada. *Id*. ¶ 28. "W.R. was admitted to [the University of Utah Neuropsychiatric Hospital ('UNI')] because he was having hallucinations and psychosis, was having violent ideations, and was deemed a danger to himself and to others." *Id*. ¶ 32. His treaters at UNI determined that his "symptoms of significant mood instability with suicidal ideation, psychotic thought patterns, as well as severe patterns of substance abuse caused him to decompensate to the point of becoming absolutely nonfunctional." *Id*. ¶ 33. "[W]ithout inpatient treatment for his mental health and substance abuse disorders," WR.'s treaters determined he "was at risk of suicide or death due to his pattern of substance abuse." *Id*. ¶ 34. W.R. was discharged from UNI and admitted to Ascend Recovery, a residential treatment program, where he was discharged and readmitted multiple times. *Id*. ¶ 35. W.R. then was admitted to Spring Lake Ranch, another residential treatment center, for "persistent health and substance abuse issues." *Id*. ¶ 36. W.R.'s mental health care providers recommended treatment at Ascend Recovery and Spring Lake Ranch to treat his multiple psychiatric disorders. *Id*. ¶ 61.

Plaintiffs timely submitted claims for W.R.'s mental health care treatment at Ascend Recovery and Spring Lake Ranch, and appealed the denial of those claims through the second level appeals. *Id*. ¶¶ 37-40. Plaintiffs allege the denial of the claims was wrongful and in violation of the Plan terms because W.R.'s condition and care needs at the time of his admission to Ascend Recovery qualified as "emergency" treatment pursuant to the terms of the SAG Plan. *Id*. ¶ 41. Plaintiff attaches the Summary Plan Description ("SPD") for the SAG Plan to the SAC. *See* SAC, Ex. A (SPD). The SPD includes a section entitled "Understanding Your Non-Network Costs" and explains "[n]on-network charges are generally much more expensive and can take a bite out of your pocketbook." *Id.* at 31.[1] The SPD states in its section describing "Hospital Benefits (including Mental Health and Substance Abuse Treatment)" that "[n]on-network services

---

[1] Page references to the SPD refer to the pagination of the document itself.

2

are only covered in the event of an emergency. See page 34 for a description of emergency treatment." *Id.* at 32. The SPD section titled "Emergencies" reads: "Emergency treatment at network and non-network hospitals is covered within 72 hours after an accident or within 24 hours of a sudden and serious illness." *Id.* at 34. It further instructs participants who are admitted to a non-network hospital to call the appropriate Plan administrator "within 48 hours to report the emergency admission" and states that "[y]our care will be reviewed and the coverage will be authorized if it is medically necessary." *Id.* The SPD indicates participants can choose from one of two plans; only Plan I offers mental health and substance abuse benefits. *Id.* Hospital Benefits other than mental health and substance abuse benefits include, among others, emergency treatment, including services billed by the hospital on their statement of charges; inpatient hospice care; network birthing centers; outpatient hospital treatment for diagnostic services and therapy; and outpatient surgery in a hospital. *Id.* at 34-35. Hospital Benefits for Mental Health and Substance Abuse include benefits for inpatient care; alternative levels of care (including residential treatment centers, partial hospital programs, and intensive outpatient programs); and "[e]mergency treatment, including services billed by the hospital on their statement of charges." *Id.* at 35. The SPD section entitled "Non-Covered Hospital Expenses" lists "[a]ll expenses at a non-network hospital, except for emergency treatment as described on page 34." *Id.* at 36.

Plaintiffs allege that the SAG Plan's classification of treatment settings violate the Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA"). SAC ¶¶ 42-59. Specifically, Plaintiffs allege that the Plan covers inpatient, out-of-network benefits for medical/surgical treatment, but that Defendant denied W.R.'s claims for mental health/substance abuse disorder treatment on the purported basis that the Plan does not cover any out-of-network inpatient services for mental health treatment. *Id.* ¶ 57. Plaintiffs further allege the Plan

> provides benefits for inpatient, out-of-network non-hospital facility care for physical medical/surgical treatment in certain circumstances, including treatment at skilled nursing facilities after transfer from an acute care hospital where the patient's care is still considered acute, inpatient physical and rehabilitative therapy after transfer from an acute care hospital where the patient's care is still considered acute, and for pulmonary, cardiac and cerebrovascular rehabilitation.

*Id.* ¶ 59.

Plaintiffs also allege the SAG Plan violates the California Mental Health Parity Act ("California Parity Act"), Cal. Health & Safety Code § 1374.72, which requires health care plans to provide medically necessary diagnosis, care, and treatment for the treatment of specified mental illnesses at a level equal to the provision of benefits for physical illnesses. *Id.* ¶ 60. W.R.'s mental health care providers recommended treatment at Ascend Recovery and Spring Lake Ranch to treat his multiple psychiatric disorders. *Id.* ¶ 61.

Plaintiffs allege the SAG Plan violates both the MHPAEA and the California Parity Act because it provides no coverage for inpatient, out-of-network intermediate levels of care for mental health or substance abuse treatment while providing such coverage for physical conditions or surgical treatment. *Id.* ¶ 63. Based on these allegations, Plaintiffs assert claims under ERISA, the MHPAEA, and the California Parity Act. *See id.*, Claim for Relief.

## LEGAL STANDARD

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

4

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**DISCUSSION**

SAG-AFTRA moves to dismiss the SAC on the ground that it fails to state a claim under ERISA, the MHPAEA, or the California Parity Act.

**A.    ERISA**

In order to state a claim for denial of benefits under ERISA, Plaintiffs must allege plausible facts showing they were owed benefits under the SAG Plan. *Elizabeth L. v. Aetna Life Ins. Co.*, 2014 WL 2621408, at *2 (N.D. Cal. June 12, 2014) (citing 29 U.S.C. § 1132(a)(1)(B); *Iqbal*, 556 U.S. at 677). Plaintiffs must allege (1) the existence of an ERISA plan, and (2) "the provisions under the plan that entitle [them] to benefits." *Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, 2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011); *accord Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1557-58 (C.D. Cal. 2015) (citing *Forest Ambulatory* for same proposition); *Steelman v. Prudential Ins. Co. of Am.*, 2007 WL 2009805, at *6 (E.D. Cal. July 6, 2007) (complaint must sufficiently allege how defendant's actions violated a plan term of ERISA to rise above speculative level).

In the "Hospital Benefits (including mental health and substance abuse treatment)" section, the SPD states that "[n]on-network services are only covered in the event of an emergency." *Id*. at 32. The SPD's summary charts listing hospital deductibles, coinsurance, and out-of-pocket maximums show "No Coverage" under any plan for non-network hospitals. *Id*. at 32-33. "Emergencies" are covered at both network and non-network hospitals "within 72 hours after an accident or within 24 hours of a sudden and serious illness." *Id*. at 34. Beneficiaries are instructed to call the Plan administrator within 48 hours of admission to a non-network hospital in connection with a mental health or substance abuse emergency to report the emergency admission. *Id*. at 40. The SPD sets forth different types of (in-network) hospital coverage for benefits "other than mental health and substance abuse" (*id*. at 34-35) and for "mental health and substance abuse (Plan I Only)" (*id*. at 35-36).[2] Hospital benefits for mental health and substance abuse include in-patient care at a 24-hour medical facility, treatment provided in a 24-hour non-medical facility (residential treatment centers), treatment that is provided for 6-8 hours a day (partial hospital programs), and treatment that is provided for 2-3 hours per day (intensive outpatient programs). *Id*. at 35. Non-covered hospital expenses include "[a]ll expenses at a non-network hospital, except for emergency treatment." *Id*. at 36.

Plan I participants are eligible for medical benefits, including treatment for mental health and substance abuse benefits. *Id.* The SPD summary charts describe the different deductibles, copays, coinsurance and out-of-pocket maximums participants will pay depending on whether they obtain treatment in or out–of-network. *Id*. at 36-37. Mental Health and Substance Abuse Benefits, whether obtained in- or out-of-network, include professional fees for listed diagnoses, for seeing a psychiatrist or psychopharmacologist for drug management, and for psychotherapy. *Id*. at 43. The Benefits Summary charts reiterate that "non-network provider" hospitals are not covered, and that "non-network provider" mental health and substance abuse hospitals and alternative levels of care are "not covered." *Id*. at 110-12 (for Plan I only). It also reiterates that "[e]mergency treatment within 72 hours after an accident or within 24 hours of a sudden and

---

[2] Coverage for the treatment of mental health and substance abuse conditions is not included in Plan II. SPD at 37.

6

serious illness will be covered at the Network Level of Benefits." *Id.* at 110.

3. <u>Analysis</u>

In dismissing the FAC for failing to state a claim, the undersigned granted Plaintiffs leave to amend the ERISA claim if they could allege W.R.'s admissions to the two non-network treatment facilities were for emergency treatment under the terms of the SAG Plan. *See* Order at 4. In the SAC, Plaintiffs allege that W.R. was admitted to mental health treatment facilities for years due to "continuing, unrelenting, and seemingly incurable" symptoms, and that he was admitted to Ascend Recovery due to those continuing symptoms. SAC ¶¶ 15-35. After his initial admissions, W.R. was discharged from then readmitted at both Ascend and Spring Ranch. *Id*. ¶¶ 35-36. The SAC alleges W.R.'s admission constituted an emergency because he experienced a sudden and serious mental illness that his treatment team at UNI determined placed him at risk of serious injury or death without inpatient treatment. *Id*. ¶¶ 34, 41. The SAC alleges W.R.'s treaters at UNI recommended he be admitted to Ascend Recovery and Spring Lake Ranch; it does not allege that those were the only residential treatment programs that could provide the medically necessary treatment W.R. required.

First, Plaintiffs argue the allegations of the SAC show that W.R.'s treatment qualified as an "emergency" under the definition of the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd(E)(1)(A). *See* Opp'n at 4. They do not explain why the definition of "emergency" in this unrelated statute trumps the definition of "emergency" in the SPD. *See id.* Terms in an ERISA plan "should be interpreted in an ordinary and popular sense, as would [a person] of average intelligence and experience.'" *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997) (quoting *Evans v. Safeco Life Ins. Co*., 916 F.2d 1437, 1441 (9th Cir. 1990)). The SPD defines emergency treatment as treatment obtained "within 72 hours after an accident or within 24 hours of a sudden and serious illness." SPD at 34. Plaintiffs accuse Defendant of conflating the long-standing nature of Plaintiff's illness with the sudden increase in acuity of his symptoms that precipitated W.R.'s emergency admission at Ascend Recovery and Spring Lake. Opp'n at 4. The SPD does not exclude such increases in acuity from the definition of emergency treatment. However, the SAC does not allege W.R.'s admittance at

7

Ascend Recovery or Spring Lake Ranch took place within 24 hours of a sudden increase in acuity of his symptoms; nor does the SAC allege W.R. received all of his treatment (i.e., each time he was readmitted) within 24 hours of an emergency. *See* SAC. As such, the SAC fails to show W.R.'s admissions at Ascend Recovery or Spring Lake Ranch qualify as emergency treatment under the SAG Plan.

Alternatively, Plaintiffs contend the Plan's definition of "emergency" is ambiguous and the exact nature of W.R.'s condition and treatment are questions of fact that should not be resolved on a 12(b)(6) Motion. Opp'n at 5. The Court finds no ambiguity in the Plan's definition of "emergency treatment." Plaintiffs have failed to state a claim under ERISA; they are not entitled to seek discovery unless and until they do.

**B.    MHPAEA & California Parity Act**

The MHPAEA prohibits health plans from imposing more restrictive treatment limitations on mental health benefits than on other medical and surgical benefits covered by a plan and from imposing separate treatment limitations that are applicable only to mental health benefits. *See* 29 U.S.C. §§ 1185a(a)(3)(A)(i)-(ii) ("[T]he treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive that the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan . . . and there are no separate limitations that are applicable only with respect to mental health or substance use disorder"). The California Parity Act similarly requires health plans to "provide coverage for the diagnosis and medically necessary treatment of severe mental illnesses . . . under the same terms and conditions applied to other medical conditions. . . ." Cal. Health & Safety Code § 1374.72(a).[3]

Plaintiffs argue the Plan violates both statutes by covering inpatient, out-of-network benefits for medical surgical treatment, including skilled nursing facilities, physical rehabilitation facilities, pulmonary, cardiac, and cerebrovascular rehabilitation, while not covering inpatient,

---

[3] As noted above, Plaintiffs have not alleged that treatment at Ascend Recovery or Spring Lake Ranch—specifically—was medically necessary, for example, because those facilities provided treatment options not available at other in-network facilities. The Court expresses no opinion as to whether such allegations would be sufficient to state a claim, but their absence further defeats Plaintiffs' claim.

8

out-of-network benefits for mental health/substance abuse treatment. *See* Opp'n at 7 (citing SAC ¶¶ 52-54, 57-59, 62-63). Relying on *Craft v. Health Care Service Corp.*, 84 F. Supp. 3d 748 (N.D. Ill. 2015), Plaintiffs argue the SAC states a claim under the MHPAEA. *See* Opp'n at 12. The *Craft* Court found the plaintiff stated a claim by alleging an exclusion in her health plan prevented beneficiaries from receiving 24-hour supervision and care for mental health conditions in a non-hospital setting, but no such limitations were placed on the treatment for other medical conditions. 84 F. Supp. 3d at 754.

Plaintiffs' arguments are premised on a fundamental misreading of the SPD. The SPD addresses skilled nursing facilities under "Hospital Benefits." *See* SPD at 36. The SPD states that "[a]ll expenses at a non-network hospital, except for emergency treatment" are "non-covered hospital expense[s]" and *in addition* states that "skilled nursing facilities" are "non-covered hospital expenses" but that the Plan "may consider benefits" "[i]f a patient is transferred to a skilled nursing facility from an acute care hospital and the care is still considered acute." *Id*. Thus, far from providing out-of-network inpatient treatment at a skilled nursing facility, the SPD both generally excludes such coverage as an out-of-network non-covered hospital expense, and specifically excludes coverage for skilled nursing facilities.[4] *Id*. at 36. At best, the SAG Plan "may consider benefits" for skilled nursing facility care where care is considered acute after transfer from an acute care hospital; because skilled nursing facility care is listed in the hospital benefits section of the SPD, benefits only would be available at an in network facility.[5] *Id*. The SPD lists cardiac and cerebrovascular rehabilitative therapy, as well as pulmonary rehabilitation as "Medical Benefits" but in no way suggests that the covered therapy is provided on an inpatient basis. SPD at 39, 42. On the contrary, hospital stays "primarily for physical or rehabilitative

---

[4] Convalescent facilities are also non-covered hospital expenses. SPD at 36. Home health care, outpatient hospice care, private duty outpatient nursing, urgent care centers, and visiting nurses are covered *medical* benefits (some only when approved in advance). *Id.* at 41.

[5] Plaintiffs argue that skilled nursing facilities are not hospitals based on the definitions found in the California Health and Safety Code, and that any person with an understanding of the word "hospital" would read the SPD to cover stays at a skilled nursing facility as non-hospital medical-surgical treatment that would be subject to the Plan's "Medical Benefits" coverage. *See* Opp'n at 11. That argument is contradicted by the clear terms of the SPD—there is no ambiguity in the document governing the SAG Plan.

9

therapy" are listed as "non-covered hospital expenses," except that the Plan "may consider benefits" if the patient was transferred to a hospital's rehabilitation wing from an acute care hospital and the care is still considered acute—and the hospital is in network. *Id.* at 36. Outpatient cardiac, cerebrovascular, and pulmonary rehabilitation are therefore all covered under "medical benefits" while hospital inpatient rehabilitation is a non-covered hospital expense unless such rehabilitation (1) is in network and (2) is not the primary reason for the hospital stay or the Plan considers providing benefits for acute transfers. Medical benefits for mental health and substance abuse include professional fees for listed disorders, fees for seeing a psychiatrist or psychopharmacologist for drug management, and fees for psychotherapy. *Id.* at 43. The Plan also covers "medically necessary" physical therapy when performed by a registered physical therapist, medical doctor or doctor of osteopathy. *Id.* at 47. Medical Benefits (including treatment for mental health and substance abuse) cover both network and non-network providers; however, different deductibles, co-pays, coinsurance, and out-of-pocket maximums apply to services based on whether they were provided in- or out-of-network. *Id.* at 37.

Plaintiffs thus have not alleged facts sufficient to show the SAG Plan covers inpatient, out-of-network benefits for medical surgical treatment, while not covering inpatient, out-of-network benefits for comparable mental health/substance abuse treatment. Plaintiffs' allegations that the SAG Plan covers non-network inpatient treatment for certain physical conditions but not for conditions based on mental health or substance abuse are conclusory and, in light of the language of the SPD, not plausible.

Plaintiffs also argue SAG-AFTRA's allowance or disallowance of his claim based on whether treatment was rendered in a hospital or not violates the classification scheme of the MHPAEA. Opp'n at 8. They accuse SAG-AFTRA of eliding the required classification in order to "obscure the fact that intermediate levels of care for physical and mental health benefits are not treated similarly." *Id.* Alternatively, Plaintiffs argue the Plan's categorization of intermediate level of care settings creates an ambiguity that must be resolved against Defendant. *Id.* at 9. Plaintiffs argue the California Parity Act requires health plans to provide coverage for medically necessary treatment, including residential treatment at a non-hospital facility, on the same terms as

those applied to physical illnesses. *Id.* at 15. The Court need not reach these arguments as they are based on the same erroneous reading of the SPD. *See id.* at 8 (citing SAC ¶¶ 57-59); *id.* at 13 (citing SAC ¶¶ 57-59, 62-63). Plaintiffs have not alleged facts sufficient to show Defendant treats intermediate levels of care for mental health services differently from intermediate levels of care for surgical/medical conditions.

## CONCLUSION

For the foregoing reasons, the Court finds Plaintiffs have not stated a claim under ERISA, the MHPAEA, or the California Parity Act. The Court will grant Plaintiffs a final opportunity to amend to state a claim. Any amended complaint must be filed by September 5, 2017.

**IT IS SO ORDERED.**

Dated: August 21, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge