1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7  | B.R. & W.R.,

Case No. 16-cv-04576-MEJ

8  | Plaintiff,

**ORDER RE: MOTION FOR ATTORNEYS' FEES**

9  | v.

Re: Dkt. No. 43

10 | BEACON HEALTH OPTIONS, et al.,

11 | Defendants.

12

**INTRODUCTION**

13    Plaintiffs, a mother and child, sued their health plan under the Employee Retirement

14 Income Security Act (ERISA) to obtain reimbursement of expenses incurred for the child's out-of-

15 network treatment. *See* Compl., Dkt. No. 1. Plaintiff W.R. has a long and severe history of

16 mental illness. Plaintiffs submitted claims for W.R.'s medically-necessary mental health care

17 treatment provided by two residential treatment facilities, Ascend Recovery and Spring Lake

18 Ranch. Plaintiffs alleged Defendant SAG-AFTRA Health Fund's denial of W.R.'s mental health

19 claims violated their health plan's terms and ERISA, and also that the plan's provisions violated

20 federal and California mental health parity acts. The Court thrice granted Defendant's motions to

21 dismiss.

22    After the Court dismissed the action with prejudice, Defendant filed a motion for

23 attorneys' fees, requesting fees in the amount of $126,378.00. *See* Mot., Dkt. No. 43. For the

24 reasons stated below, the Court **GRANTS IN PART** the Motion for Attorneys' Fees.

25

**ORDERS OF DISMISSAL**

26 **A.    First Order**

27    In the First Amended Complaint (FAC), Plaintiffs alleged their plan covered out-of-

28 network treatment at the two residential treatment facilities, and that Defendant's refusal to

1    reimburse them for such costs violated the terms of their plan.  *See* FAC, Dkt. No. 21.  Plaintiffs

2    further alleged that, although they did not specifically assert claims based on, Defendant's refusal

3    to pay for W.R.'s medically necessary treatment violated the Mental Health Parity and Addiction

4    Equity Act (MHPAEA) and the California Mental Health Parity Act.  FAC ¶¶ 11-15.

5        The Court found Plaintiffs failed to state a claim for denial of benefits:

6            Plaintiffs' allegations that SAG-AFTRA violated the terms of the
             SAG Plan are conclusory, and the FAC does not allege facts
7            sufficient to show Plaintiffs are owed benefits under the SAG Plan.
             The FAC generally suggests the SAG Plan offered behavioral and
8            mental health benefits to participants.  However, the FAC does not
             identify specific provisions that cover W.R.'s treatment at Ascend
9            Recovery or Spring Lake Ranch; nor does it identify the provisions
             of the SAG Plan Plaintiffs contend SAG-AFTRA violated.  The
10           FAC instead alleges that federal and state law required the SAG
             Plan to provide coverage for mental health conditions in parity with
11           coverage for non-mental health conditions; however, Plaintiffs fail
             to allege the SAG Plan did not, in fact, provide parity.
12
             Because Plaintiffs have not identified precisely which Plan
13           provisions they contend SAG-AFTRA violated by not paying for
             W.R.'s residential mental health treatment, the Court GRANTS the
14           Motion.  Plaintiffs must identify those terms of the Plan on which
             their claim is based with sufficient specificity to show their claim is
15           plausible on its face.

16   First Order at 4 (internal citations omitted), Dkt. No. 29.

17       The Court denied Plaintiffs leave to amend to state a claim based on Defendant's denial of

18   payment for non-emergency claims for out-of-network hospital charges, as Defendant's plan

19   documents (the SPD) squarely foreclosed such a claim: "*The Court cannot find Plaintiffs'*

20   *interpretation of the SPD language is reasonable*.  The SPD defines residential treatment centers

21   as 'hospitals' and excludes from its scope of coverage any out-of-network hospitals except for

22   emergency treatment." *Id.* at 8 (emphasis added).

23       The Court, however, granted Plaintiffs leave to amend the complaint, "[t]o the extent

24   Plaintiffs can, *consistent with their obligations under Rule 11*, allege coverage existed because

25   W.R. received emergency treatment at these facilities, or can assert another claim[.]" *Id.* at 8

26   (emphasis added).

27   **B.    Second Order**

28       Plaintiffs' Second Amended Complaint (SAC) asserted a new ERISA theory based on

2

1    emergency treatment.  SAC ¶ 41 ("Defendant's denials of W.R.'s claims and appeals were

2    wrongful and in violation of the Plan terms because W.R.'s condition and care needs at the time of

3    his admission to Ascend Recovery qualified as 'Emergency' treatment as outlined in the SAG

4    Plan on the basis of his sudden and serious mental illness, placing him at risk of serious injury or

5    death").  The SAC also explicitly added theories of recovery based on MHPAEA and the

6    California Parity Act.  *See* SAC ¶¶ 42-67.

7         The Court found the SAC did not allege facts sufficient to show W.R.'s admissions to the

8    two non-network treatment facilities at issue qualified as emergency treatment under the terms of

9    the plan:

> In the SAC, Plaintiffs allege that W.R. was admitted to mental
> health treatment facilities for years due to "continuing, unrelenting,
> and seemingly incurable" symptoms, and that he was admitted to
> Ascend Recovery due to those continuing symptoms.  After his
> initial admissions, W.R. was discharged from then readmitted at
> both Ascend and Spring Ranch.  The SAC alleges W.R.'s admission
> constituted an emergency because he experienced a sudden and
> serious mental illness that his treatment team at UNI determined
> placed him at risk of serious injury or death without inpatient
> treatment.  The SAC alleges W.R.'s treaters at UNI recommended
> he be admitted to Ascend Recovery and Spring Lake Ranch; it does
> not allege that those were the only residential treatment programs
> that could provide the medically necessary treatment W.R. required.
>
> First, Plaintiffs argue the allegations of the SAC show that W.R.'s
> treatment qualified as an "emergency" under the definition of the
> Emergency Medical Treatment and Active Labor Act, 42 U.S.C. §
> 1395dd(E)(1)(A).  They do not explain why the definition of
> "emergency" in this unrelated statute trumps the definition of
> "emergency" in the SPD.  Terms in an ERISA plan "should be
> interpreted in an ordinary and popular sense, as would [a person] of
> average intelligence and experience.'"  The SPD defines emergency
> treatment as treatment obtained "within 72 hours after an accident or
> within 24 hours of a sudden and serious illness."  Plaintiffs accuse
> Defendant of conflating the long-standing nature of Plaintiff's
> illness with the sudden increase in acuity of his symptoms that
> precipitated W.R.'s emergency admission at Ascend Recovery and
> Spring Lake.  The SPD does not exclude such increases in acuity
> from the definition of emergency treatment.  However, the SAC
> does not allege W.R.'s admittance at Ascend Recovery or Spring
> Lake Ranch took place within 24 hours of a sudden increase in
> acuity of his symptoms; nor does the SAC allege W.R. received all
> of his treatment (i.e., each time he was readmitted) within 24 hours
> of an emergency.  As such, the SAC fails to show W.R.'s
> admissions at Ascend Recovery or Spring Lake Ranch qualify as
> emergency treatment under the SAG Plan.

3

1
2
3
4

> Alternatively, Plaintiffs contend the Plan's definition of
> "emergency" is ambiguous and the exact nature of W.R.'s condition
> and treatment are questions of fact that should not be resolved on a
> 12(b)(6) Motion. The Court finds no ambiguity in the Plan's
> definition of "emergency treatment." Plaintiffs have failed to state a
> claim under ERISA; they are not entitled to seek discovery unless
> and until they do.

5

Second Order at 7-8, Dkt. No. 35.[1]

6

After concluding Plaintiffs' remaining arguments were based on a "fundamental

7

misreading" of the SPD, the Court also found Plaintiffs failed to state a claim under the MHPAEA

8

and the California Parity Act because

9
10
11
12

> Plaintiffs . . . have not alleged facts sufficient to show the SAG Plan
> covers inpatient, out-of-network benefits for medical surgical
> treatment, while not covering inpatient, out-of-network benefits for
> comparable mental health/substance abuse treatment. Plaintiffs'
> allegations that the SAG Plan covers non-network inpatient
> treatment for certain physical conditions but not for conditions based
> on mental health or substance abuse are conclusory and, in light of
> the language of the SPD, not plausible.

13

*Id.* at 9-10; *see also id.* at 11 ("Plaintiffs have not alleged facts sufficient to show Defendant treats

14

intermediate levels of care for mental health services differently from intermediate levels of care

15

for surgical/medical conditions.").

16

The Court granted Plaintiffs "a final opportunity to amend to state a claim." *Id.* at 11.

17

**C.  Third Order**

18

Plaintiffs added more information to the Third Amended Complaint (TAC, Dkt. No. 36) to

19

attempt to show W.R.'s admissions constituted "emergency treatment" under the terms of the

20

SPD. The Court found those allegations insufficient:

21
22
23

> The TAC continues to illustrate W.R.'s serious mental illness. It
> also alleges facts sufficient to show that each of W.R.'s admittances
> to Ascend Recovery and Spring Lake Ranch took place when he was
> in a state of acute mental health crisis and that his life and health
> were in jeopardy. But the TAC insufficiently alleges W.R.'s

24

25
26
27
28

---

[1] In its Third Order, *see infra*, the Court "clarifie[d] that it did not . . . endorse SAG-AFTRA's interpretation that the SPD only provides coverage for out-of-network treatment for emergency services that is completed within 24 hours of an emergency. . . . [T]he Court addressed admittance within 24 hours of an emergency. Even if the Court were to agree with SAG-AFTRA's interpretation, this would not be a ground to dismiss the denial of benefits claim, as SAG-AFTRA might still be liable to pay for the costs of treatment rendered within 24 hours of the emergency." Third Order at 8 n.3, Dkt. No. 41.

4

admittances to Ascend Recovery or Spring Lake Ranch took place within 24 hours of a sudden increase in the acuity of his symptoms. The TAC does not allege W.R.'s condition ever improved; on the contrary, it alleges W.R. experienced a continuous state of severe illness that manifested in episodes of paranoid and delusional thinking, in which W.R. experienced a series of delusions. The TAC alleges W.R. was in a state of crisis each time he was admitted, but it still does not allege dates with sufficient clarity to show W.R. was admitted within 24 hours of a sudden increase in the acuity of his symptoms. The seriousness of W.R.'s condition is unquestionably alleged, but the fact he could hurt himself or others because of his serious condition does not, in and of itself, show that he qualified for emergency services under the facts alleged.

\* \* \*

The TAC alleges that . . . W.R. suffered from a serious condition for a very long time. But the facts in the TAC do not show that he was admitted to Ascend Recovery or Spring Lake Ranch each time within 24 hours of a "sudden" change in his ongoing serious illness.

Third Order at 9-10 (analyzing *City of Hope Nat'l Med. Ctr. v. Seguros de Servicios de Salud de Puerto Rico, Inc.*, 983 F. Supp. 68 (D. P.R. 1997)).

The Court also noted the TAC alleged Ascend Recovery and Spring Lake Ranch were residential treatment programs, but did not allege facts showing these facilities provided emergency services; the TAC did not allege Plaintiffs complied with the SPD's instructions that members who "are admitted to a non-network hospital should call one of the following within 48 hours to report the emergency admission" – including for mental health or substance abuse in connection with any of W.R.'s "many" admissions to Ascend Recovery and Spring Lake Ranch; and that Plaintiffs had not alleged the admissions were emergencies until they filed the SAC, after the Court gave them leave to allege, "consistent with their obligations under Rule 11, [that] coverage existed because W.R. received emergency treatment at these facilities." Third Order at 9 n.4.

The Court also dismissed the TAC's MHPAEA and California Parity Act claims:

The Court previously rejected Plaintiffs' arguments that the Plan violated the MHPAEA and California Parity Act. The TAC re-alleges the identical facts the Court found insufficient to state a claim under either statute. The Court reincorporates its previous findings and conclusion here by reference. The TAC sets forth no new allegations concerning SAG-AFTRA's alleged violation of the California Parity Act. The Court will not revisit the sufficiency of the same allegations it previously rejected, and will only address Plaintiffs' new factual allegations concerning SAG-AFTRA's

5

1    alleged violations of the MHPAEA.

2    Third Order at 10.  The Court found those new allegations "purely conclusory[,]" insufficient to

3    state a claim, and/or misrepresented the terms of the SPD.  *Id.* at 10-13.

4        The Court also dismissed Plaintiffs' new claim for breach of fiduciary obligations under

5    ERISA, for a number of reasons, including that the claim was conclusorily alleged on information

6    and belief.  *Id.* at 14-15.

7                                    **DISCUSSION**

8        In an ERISA action, the court may exercise its discretion to allow reasonable attorneys'

9    fees and costs to either party.  *See* 29 U.S.C. § 1132(g).  Courts may grant fees to prevailing

10   defendants against individual ERISA plaintiffs.  *See Estate of Shockley v. Alyeska Pipeline Serv.*

11   *Co.*, 130 F.3d 403, 408 (9th Cir. 1997) ("We first disabuse the district court of the suggestion that

12   we favor one side or the other in ERISA fee cases.  The statute is clear on its face—the playing

13   field is level."); *Caplan v. CNA Fin. Corp.*, 573 F. Supp. 2d 1244, 1248-49 (N.D. Cal. 2008)

14   (collecting cases awarding fees against individual plan participants).

15       To obtain such fees, parties must demonstrate that (1) they have achieved "some degree of

16   success on the merits," and (2) the award is justified under the five factor test set forth in *Hummell*

17   *v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980).  *See Hardt v. Reliance Std. Life Ins. Co.*,

18   560 U.S. 242, 255 (2010); *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118,

19   1121 (9th Cir. 2010).  The five *Hummell* factors are: (1) the degree of the opposing party's

20   culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3)

21   whether an award of fees against the opposing party would deter others from acting in similar

22   circumstances; (4) whether the party requesting fees sought to benefit all participants and

23   beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5)

24   the relative merits of the parties' positions.  634 F.2d at 453.  None of these factors is necessarily

25   decisive, some may not be pertinent in a given case, and various permutations and combinations

26   can support an award of attorneys' fees.  *Paddack v. Morris*, 783 F.2d 844, 846 (9th Cir. 1986);

27   *Carpenters S. Cal. Admin. Corp. v. Russel*, 726 F.2d 1410, 1416 (9th Cir. 1984).

28       There is no dispute that Defendant achieved success on the merits: the Court dismissed the

6

1  TAC with prejudice.  The Court accordingly turns to the five *Hummell* factors:

2  **A.  Bad Faith**

3  Plaintiffs argue they filed the action in good faith.  Opp'n at 5-7, Dkt. No. 44.  But the

4  central inquiry here is not their subjective good faith, but whether Plaintiffs had "a reasonable

5  belief that they could prove an actionable ERISA claim." *Cline v. The Indust. Maint. Eng'g &*

6  *Contracting Co.*, 200 F.3d 1223, 1236 (9th Cir. 2000) (holding district court did not abuse

7  discretion in denying attorneys' fees in ERISA action where "the Record contain[ed] enough

8  documentary material to support the Court's conclusion that a reasonable basis existed for

9  Appellants to make their claims.").

10  Plaintiffs argue that "[b]y any measure, the SAG health care plan at issue here is draconian

11  in its limitations" and that they had a "reasonable and good faith belief that they should be entitled

12  to some degree of coverage from their health plan[.]"  Opp'n at 5.  But tellingly, Plaintiffs were

13  unable to allege in the FAC any specific plan term that Defendant violated by denying coverage.

14  Indeed, the Court dismissed the FAC on that ground.  The Court denied Plaintiffs leave to amend

15  that claim because the SPD terms foreclosed Plaintiffs' entire theory of recovery; the Court

16  explicitly stated it "cannot find Plaintiffs' interpretation of the SPD language is reasonable."  First

17  Order at 8.

18  Nor have Plaintiffs demonstrated they had a reasonable basis for filing the SAC and the

19  TAC.  The Court ordered Plaintiffs to file a supplemental brief addressing how, "[i]n light of the

20  Court's analysis of the [SPD] and the Court's clear instructions that Plaintiffs were required to

21  plead allegations showing W.R.'s admittance to Spring Lake Ranch and Ascend Recovery

22  qualified as 'emergencies' within the meaning of the [SPD], . . . Plaintiffs' repeated failures to do

23  so [did] not demonstrate bad faith on their parts[.]"  Suppl. Br. Order at 3, Dkt. No. 48.  The Court

24  also asked them to address how their decision to reassert in subsequent complaints many of the

25  allegations the Court previously rejected as insufficient to state a claim, and their request that the

26  Court to "reconsider" its prior findings in opposing the third motion to dismiss, did not

27  demonstrate bad faith.  *Id.*

28

7

1          1.       Failure to Plead Facts Regarding Emergencies

2          Plaintiffs argue there are three reasons why their failure to plead allegations showing

3   W.R.'s admittances qualified as emergencies within the meaning of the SPD did not demonstrate

4   bad faith:

5                  1) Plaintiffs did add new factual allegations describing W.R.'s
                   worsening symptoms in the 24 hours before his admission to
6                  residential treatment.  This is one of the reasons Plaintiffs third
                   amended complaint was substantially more lengthy than the prior
7                  iteration; 2) as a result of the very illnesses for which W.R. was
                   receiving the disputed treatment in the case, it was difficult for
8                  Plaintiffs to recount with greater specificity the symptoms in each
                   24 hour period preceding W.R.'s admission and numerous re-
9                  admissions to residential treatment; and 3) Plaintiffs did add a new
                   cause of action to the third amended complaint, for breach of
10                 fiduciary duty, which, if granted, would have resulted in reformation
                   of the "emergency treatment" limitation of the SAG Plan that in this
11                 case operated to prevent W.R. from receiving residential mental
                   health treatment benefits.  Had Plaintiffs succeeded in reforming the
12                 "emergency treatment" limitation this would have potentially
                   benefited other plan participants, and dramatically so.
13

14  Suppl. Br. at 14, Dkt. No. 49.

15         None of these reasons establishes Plaintiffs had a reasonable basis for their successive

16  amendments:

17         First, the Court granted Plaintiffs leave to amend if, consistent with their Rule 11

18  obligations, they could state facts sufficient to show the admissions constituted "emergency

19  treatment" as defined in the SPD.  The Court identified the relevant definition in the SPD:

20  "[T]reatment obtained 'within 72 hours after an accident or within 24 hours of a sudden and

21  serious illness.'  [] The SPD does not exclude . . . increases in acuity from the definition of

22  emergency treatment. " Second Order at 7-8.  In the SAC, Plaintiffs added a single allegation to

23  plead this central issue: "W.R.'s condition and care needs at the time of his admission to Ascend

24  Recovery qualified as 'Emergency' treatment as outlined in the SAG Plan on the basis of his

25  sudden and serious mental illness, placing him at risk of serious injury or death."  SAC ¶ 41.  This

26  conclusory allegation ignored the Court's explicit direction and fell short of Rule 8 pleading

27  standards: "the SAC does not allege W.R.'s admittance at Ascend Recovery or Spring Lake Ranch

28  took place within 24 hours of a sudden increase in acuity of his symptoms . . . ."  Second Order at

8

1    7-8.  Plaintiffs added new factual allegations about W.R.'s admittances in the TAC.  *See* TAC ¶¶

2    36, 38-40, 43-51.  While these allegations detailed protracted and severe mental illness, they did

3    no more than conclusorily allege that each admission "qualified as emergency treatment within 24

4    hours of a serious and sudden illness under the terms of the" plan.  The TAC therefore did not

5    contain new factual allegations describing W.R.'s worsening symptoms in the 24 hours before

6    each of his admissions.

7            Second, if it was difficult "to recount with greater specificity" W.R.'s symptoms in each

8    24-hour period preceding an admission, Plaintiffs could have pleaded the matter on information

9    and belief, explaining the factual basis for their belief that W.R.'s symptoms had worsened within

10   24 hours before each of his admissions; they chose not to do so.  Plaintiffs argue B.R. "was at

11   various times called upon to fly to other states in order to attend to her son, and to assist him in

12   getting treatment."  Suppl. Br. at 12.  But Plaintiffs do not allege when B.R. first learned of each

13   emergency, the dates of any of these trips, and the dates of W.R.'s eventual admissions – facts

14   which would be in Plaintiffs' possession.

15           Finally, the "new" ERISA fiduciary duty claim in the TAC was based on the same theories

16   and allegations the Court had rejected in dismissing the SAC's MHPAEA and California Parity

17   Act claims.  *See* TAC ¶ 109 ("Plaintiffs assert that they are entitled to 'other equitable relief' in

18   light of Defendant's continuing course of conduct in violating the terms of the Plan and applicable

19   law, including violations of the MHPAEA and California Mental Health Parity Act as described

20   herein[.]"), ¶ 111 ("In denying W.R.'s residential mental health treatment benefits based on an

21   out-of-network treatment limitation in violation of the MHPAEA and California Mental Health

22   Parity Act, by failing to maintain an adequate network of mental health providers, and by failing

23   to propose a qualified, safe and appropriate in-network provider with an available treatment bed'"

24   Defendant violated fiduciary duties).  The Court found Plaintiffs' parity arguments were

25   "premised on a fundamental misreading of the SPD."  Second Order at 9; *see also id.* at 10

26   ("Plaintiffs' allegations that the SAG Plan covers non-network inpatient treatment for certain

27   physical conditions but not for conditions based on mental health or substance abuse are

28   conclusory and, in light of the language of the SPD, not plausible.").  Adding a new claim in the

9

1   TAC based on allegations and theories the Court previously rejected does not establish how

2   Plaintiffs had a reasonable belief they would prevail on this new claim.

3           2.      Reasserting Dismissed Allegations

4           Plaintiffs argue that, under a rule superseded in 2012, they were required to re-allege

5   dismissed claims lest they waive the right to address them on appeal. Suppl. Br. at 7-10 (citing

6   *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997), *overruled by Lacey v. Maricopa

7   Cty.*, 693 F.3d 896, 928 (9th Cir. 2012)). Plaintiffs filed this action in 2016, well after the Ninth

8   Circuit made plain in *Lacey* that parties would not waive the right to address on appeal any

9   dismissed claims they did not reassert in an amended pleading. *Lacey*, 693 F.3d at 928.

10          Here, Plaintiffs successively reasserted claims using the very same allegations the

11  undersigned had found insufficient to state a claim, conclusory, and/or based on a fundamental

12  misreading of the SPD. Plaintiffs acknowledged the undersigned had rejected their theories, but

13  nevertheless asked the Court to "reconsider" its position—without meeting any of the

14  requirements of a motion for reconsideration. *See* Civ. L.R. 7-9. Plaintiffs required Defendants,

15  and the Court, to expend time to analyze the "new" claims and parse out any new allegations in

16  order to evaluate them.

17          Plaintiffs argue that "no actual claim, i.e., Plaintiffs' cause of action for benefits, under

18  ERISA. . . . was ever dismissed." Suppl. Br. at 10. This blatantly ignores the fact that the Court

19  *thrice* dismissed this claim. *See supra.* In fact, the Court did not grant Plaintiffs leave to amend

20  the complaint to attempt to restate a claim based on their original ERISA claim because it was not

21  based on a reasonable reading of the SPD; in other words, leave to amend would be futile. The

22  Court only granted Plaintiffs leave to amend if, *consistent with their Rule 11 obligations*, they

23  could allege W.R.'s admittances constituted emergency treatment within the meaning of the SPD

24  (or could assert some other claim). The Court again dismissed the claim because Plaintiffs' single,

25  conclusory allegation that W.R.'s condition at the time of his admissions qualified as emergencies

26  under the SPD (SAC ¶ 41), was insufficient to state a claim. While the TAC provided more

27  information about each admission, Plaintiffs still failed to plead facts sufficient to show each

28  admission took place within 24 hours of a sudden increase in acuity of B.R.'s symptoms. The

                                                10

1    absence of any dates or timelines suggests Plaintiffs avoided pleading facts that could possibly be

2    considered sufficient.  Indeed, based on Plaintiffs' Supplemental Brief, the Court finds it highly

3    doubtful that Plaintiffs could so allege.  *See* Suppl. Br. at 11-12 (explaining W.R.'s compromised

4    mental health make him a poor historian of his care, and that because he was living apart from his

5    parents during this period, B.R. has limited information).[2]

6         The Court similarly dismissed the SAC's MHPAEA and California Parity Act claims and,

7    in dismissing those claims in the TAC, observed that Plaintiffs had relied on identical allegations

8    the Court had previously found insufficient and theories the Court had rejected as unfounded.

9         Plaintiffs' decision to re-allege claims based on the same theories or allegations the Court

10   previously rejected caused Defendant and the Court to waste resources in parsing those claims and

11   reiterating the Court's prior rulings.

12        3.    Summary

13        Unlike in *Cline*, the record here is devoid of material supporting the inference that

14   Plaintiffs had a reasonable basis for filing their successive complaints, which continued to assert

15   allegations the Court had rejected as conclusory, insufficient to state a claim, and/or based on a

16   fundamental misreading of the SPD.  This factor weighs in favor of awarding fees.

17   **B.    Ability to Satisfy Fees**

18        Plaintiffs demonstrated that any fee award would constitute a severe hardship for W.R.

19   Opp'n at 7; B.R. Decl. ¶¶ 6-7, 10-11, Dkt. No. 44-2.  While Plaintiffs explain that B.R. has paid,

20   and continues to pay, for W.R.'s treatment and also provides financial support to her son, they do

21   not demonstrate that W.R. is unable to satisfy a fees award, or that doing so would impact her

22   ability to continue to pay the costs of her son's care.  That B.R. and her husband live in a 1931

23   bungalow in Glendale, California, that B.R.'s husband is retired, and that "most of the travel" they

24   take is to visit their son in no way establishes that B.R. is unable to satisfy a fee award.  *See* B.R.

25

26   [2] Plaintiffs assert they alleged "how Defendant's in-network providers were insufficient to treat
     W.R." Suppl. Br. at 5.  In fact, Plaintiffs never competently alleged – nor explained in any
27   Opposition – why they could not utilize one of Defendant's in-network providers, nor whether
     they complied with the SPD's requirement they contact Defendant within 24 hours of admission to
28   an out-of-network emergency treatment facility.  *Cf.* TAC ¶ 96.

                                                    11

1    Decl. ¶ 12. Similarly, the fact B.R. and her husband continue to support their son does not

2    establish they are unable to satisfy a fee award. *See id.* ¶ 13. B.R. has offered no evidence

3    regarding her income or assets; she offers no facts by which this Court could determine she lacks

4    the ability to satisfy a fee award.

5    **C.    Deterrence**

6    The Ninth Circuit has "very frequently suggest[ed] that attorney's fees should not be

7    charged against ERISA plaintiffs." *Tingey v. Pixley-Richards West, Inc.*, 958 F.2d 908, 909 (9th

8    Cir. 1992) (holding that it would be "unjust" to require plaintiffs to pay the defendant's attorneys'

9    fees, even though the defendants had prevailed at the district court level, where plaintiffs were a

10   couple who were caring for their severely disabled son and who were seeking "no more than a

11   recovery of what they believe[d], rightly or wrongly, to be their just benefits." (giving "careful

12   consideration" to Seventh Circuit's analysis in *Marquardt v. North American Carrier Corp.*, 652

13   F.2d 715 (7th Cir. 1981))). But the Ninth Circuit subsequently rejected this approach. *See*

14   *Alyeska*, 130 F.3d at 408 ("We first disabuse the district court of the suggestion that we favor one

15   side or the other in ERISA fee cases. The statute is clear on its face—the playing field is level.").

16   Here, even though the Court found the FAC was not based on a reasonable reading of the

17   SPD, it would have been loath to grant a fee award for fear that future plaintiffs could be deterred

18   from litigating claims that were not absolutely clear cut. Similarly, the Court would have been

19   loath to base a fee award on Plaintiffs' attempts to analyze relatively new laws such as the

20   MHPAEA and the California Parity Act. But the Court granted Plaintiffs two opportunities to

21   amend, and each time Plaintiffs failed to heed the Court's instructions requiring them to plead

22   facts rather than simply conclusions. Awarding fees under these specific circumstances will

23   encourage parties to assess the merits of continuing to pursue claims that have already been found

24   meritless. *See Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*, 25 F.3d 743, 748

25   (9th Cir. 1994) (awarding fees against plaintiffs appropriate where it "serve[s] the purposes of

26   ERISA by discouraging other litigants from relentlessly pursuing groundless claims").

27   **D.    Benefit to Other Participants/Significant Legal Question**

28   This factor is "more appropriate to a determination of whether to award fees to a plaintiff

1       than to a defendant." *Tingey*, 958 F.2d at 910 (quoting *Marquardt*, 652 F.2d at 720-21). Applying

2       it here, however, the FAC involved no significant question: it simply called for a straightforward

3       reading of the SPD and the application of well-settled law. The SAC and TAC did require the

4       parties and the Court to delve into questions regarding the parity of service offered in the SPD. A

5       resolution in Plaintiffs' favor could have been of benefit to other ERISA beneficiaries whose plans

6       did not comply with those statutes; however, Plaintiffs insufficiently alleged any violations of the

7       MHPAEA or the California Parity Act.

8       **E.      Relative Merits of Positions**

9       Plaintiffs argue they "entered the litigation with[out] clear notice that their claims had no

10      merit. The Plan at issue contains very rare and extreme limitations on out of network treatment,

11      which, when applied in the mental health context, all but eliminated any suitable options for

12      Plaintiff's treatment." Suppl. Br. at 10. The Court is sympathetic, but the fact remains that

13      Plaintiffs' FAC was based on an unreasonable reading of the SPD. Plaintiffs' frustration with the

14      applicable definition of "emergency" is also understandable, but, as the Court noted in its First

15      Order, that term is clearly defined in the SPD. Plaintiffs' first attempt to plead facts sufficient to

16      show W.R.'s admissions qualified as emergencies under this definition was purely conclusory;

17      their second attempt still did not include facts sufficient to show W.R. experienced an increase in

18      the acuity of his symptoms within 24 hours of admittance. With respect to the Parity Act claims,

19      the Court also found that "Plaintiffs' allegations were . . . conclusory and, in light of the language

20      of the SPD, not plausible." Second Order at 9-10. Plaintiffs were fully aware of the relevant

21      definitions and of the Rule 8 pleading standards; their inability to articulate facts (even on

22      information and belief) sufficient to satisfy these definitions and Rule 8 shows their position was

23      weak.

24      **F.      Summary**

25      On balance, the Court finds the *Hummell* factors weigh in favor of granting Defendant's

26      fee application in part. The Court finds that on the one hand, Plaintiffs did not have a reasonable

27      basis for believing their ERISA claims had merit; made no effort to offer evidence that paying the

28      fees would place a financial burden of B.R.; and the relative merits of the parties' positions favor

13

1   Defendant.  On the other hand, the Court is concerned about deterring future plaintiffs from

2   pursuing potentially meritorious claims.  The Court accordingly GRANTS IN PART Defendant's

3   Motion for a Fee Award: Defendant is only entitled  to the attorneys' fees and costs it incurred

4   after the Court dismissed the SAC.  This outcome will not discourage ERISA plaintiffs from filing

5   lawsuits to vindicate their rights, but will deter them from filing successive complaints based on

6   conclusory allegations, and which ignore the plain text of plan documents and/or the Court's

7   directions.  It is incumbent upon attorneys to inform their clients about the potential ramifications

8   of proceeding under these circumstances so the clients can evaluate the risks and benefits of their

9   decision to continue litigation.

10          The Court dismissed the SAC on August 21, 2017.  *See* Second Order.  Counsel for

11  Defendant Peter S. Dickinson attaches to his declaration a summary of fees and costs.  *See*

12  Dickinson Decl., Ex. A, Dkt. No. 43-2.  This shows counsel has, between September 5, 2017 and

13  December 11, 2017, had billed Defendant for 123.8 hours.  *Id.*  The work was performed by a

14  number of professionals who are identified only by their initials, but whose initials match those of

15  the three Bush Gottlieb attorneys on the caption: Peter S. Dickinson (PSD), Erica Deutsch (ED),

16  and Dexter Rappleye (DR).  Mr. Dickinson, a partner, charged $460 per hour; ED charged $460

17  per hour; and DR charged $380 per hour.  *Id.*  Mr. Dickinson declares he has been admitted to the

18  bar for over 27 years and has spent the majority of his time practicing in the area of employee

19  benefits law.  Dickinson Decl. ¶ 2.  He declares partners at Bush Gottlieb currently charge $460

20  per hour, and that these rates are consistent with or lower than the prevailing rates in the

21  community.  *Id.* ¶ 5.  The Court is familiar with the prevailing rates and concurs with that

22  assessment.  Mr. Dickinson also declares he reviewed the time sheet and confirmed its accuracy as

23  it pertains to his work; he "believes" the entries that relate to the work of the other professionals

24  are also accurate.  *Id.* ¶ 4.

25          Mr. Dickinson's Declaration is sufficient to support the fees requested for the work he

26  performed; however, it is insufficient with respect to the fees ED and DR incurred.  No later than

27  March 21, 2018, Defendant may submit a supplemental declaration (or declarations) updating the

28  total hours of work performed to date, and the costs incurred, by defense counsel since September

14

5, 2017; confirming that ED and DR are Erica Deutsch and Dexter Rappleye; confirming the professional experience of ED and DR warrants the hourly rates charged; and confirming their work entries are accurate.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Attorneys' Fees is GRANTED IN PART. The Court will issue a further order based on the supplemental declaration(s).

**IT IS SO ORDERED.**


Dated: March 7, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge